LOUGHRAN et al., Appellants,

v.

KETTERING MEMORIAL HOSPITAL et al., Appellees.

[Cite as *Loughran v. Kettering Mem. Hosp.* (1998), 126 Ohio App.3d 468.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 16636.

Decided Feb. 27, 1998.

**470**

*Richard B. Reiling,* for appellants.

*Howard R. Krisher,* for appellee Kettering Memorial Hospital.

*Deborah R. Lydon* and *Julie L. Seitz,* for appellee Charles Bensonhaver, M.D.

GRADY, Judge.

Plaintiffs, Gerard A. and Kathleen P. Loughran, appeal from summary judgments that were rendered in favor of defendants, Kettering Memorial Hospital ("KMH") and Charles Bensonhaver, M.D., on plaintiffs' claims for false imprisonment, negligence, infliction of emotional distress, and loss of consortium. The

claims arose out of Gerard Loughran's involuntary commitment to the psychiatric unit of KMH by Dr. Bensonhaver.

The trial court granted the defendants' motions for summary judgment on a finding that they are immune from liability on plaintiffs' claims for relief pursuant to R.C. 5122.34. We agree with that finding. Accordingly, we will affirm the judgments from which this appeal was taken.

## FACTS

On September 27, 1993, Gerard Loughran was taken to KMH by ambulance after his wife, Kathleen Loughran, had difficulty awakening him from a nap. He experienced two seizures while in the emergency room and was treated and admitted to the hospital's intensive care unit.

On September 29, 1993, Gerard Loughran was transferred to the Psychiatric Unit of KMH on a seventy-two-hour involuntary admission that was ordered by defendant Charles Bensonhaver, a psychiatrist. Dr. Bensonhaver had information concerning Gerard Loughran's physical and mental condition, and he consulted with other staff psychiatrists before ordering the commitment. Dr. Bensonhaver executed an affidavit that stated the following findings, any one of which is the basis of an involuntary commitment of the kind ordered pursuant to R.C. 5122.11. Dr. Bensonhaver stated that Gerard Loughran:

"[R]epresents a substantial risk of physical injury to himself as manifested by evidence of threats of, or attempts at, suicide or serious self-inflicted bodily harm;

"represents a substantial risk of physical harm to others as manifested by evidence of recent homicidal or other violent behavior or evidence or recent threats that place another in reasonable fear of violent behavior and serious physical harm; and

"represents a substantial and immediate risk of physical impairment or injury to himself as manifested by evidence that he is unable to provide for and is not providing for his basic physical need[s] because of his mental illness and that appropriate provision for such needs cannot be made immediately available in the community."

As required by the statutes governing involuntary hospitalizations, Dr. Bensonhaver provided the following factual support:

"This man has a well established diagnosis of seizure disorder and the most recent unconscious spell was just three days ago. Nonetheless, he frequently forgets to take his medication and drives without a license and with impunity. He also has a major drinking problem and Personality Disorder. He verbally terrorizes his family [and] is grossly hostile to authority."

On September 30, 1996, Gerard Loughran was interviewed by a mental health therapist on behalf of the state, who reported to the probate court that Mr. Loughran was mentally ill and a danger to himself. The therapist's report was reviewed by Dr. Siddiqui, M.D., of Daymont West, Inc., an independent agency assigned by the court to evaluate patients, who concurred in the opinion of the therapist.

On October 1, 1993, the probate court found probable cause to detain Gerard Loughran until a hearing could take place on the matter. His court-ordered detention was effective from October 1, 1993 through October 5, 1993. A hearing was held by the probate court on October 5, 1993, following which Gerard Loughran was released from KMH.

This action was commenced by the Loughrans on their claims for relief for false imprisonment, negligence, intentional and negligent infliction of emotional distress, and loss of consortium. After responsive pleadings were filed, the defendants filed motions for summary judgment, relying on depositions of the parties and other evidentiary materials. The trial court granted the defendants' motion on the emotional distress claims, but it overruled the motions filed with respect to the remaining claims for relief.

Defendants filed a second set of motions for summary judgment on all remaining · claims for relief, relying on R.C. 5122.34. The statute provides:

"Persons, including, but not limited to, boards of alcohol, drug addition, and mental health services and community mental health agencies, *acting in good faith, either upon actual knowledge or information thought by them to be reliable,* who procedurally or physically assist in the hospitalization or discharge, determination of appropriate placement, or in judicial proceedings of a person under this chapter, do not come within any criminal provisions, and *are free from any liability to the person hospitalized* or to any other person. No person shall be liable for any harm that results to any other person as a result of failing to disclose any confidential information about a mental health client, or failing to otherwise attempt to protect such other person from harm by such client. This section applies to expert witnesses who testify at hearings under this chapter." (Emphasis added.)

In opposition to the motions for summary judgment, the plaintiffs relied on a deposition of Joel Steinberg, M.D., a psychiatrist, who opined that the statement of factual support made by Dr. Bensonhaver, quoted above, "do[es] not support the three (statutory reasons in R.C. 5122.11) he has checked as the reason he justifies hospitalizing Mr. Loughran against his will."

The trial court granted the motions for summary judgment on the basis of the defendants' R.C. 5122.34 claim, stating:

"One can argue about the sufficiency of the facts and their relationship to the statutory grounds for hospitalization. But there is no evidence that Dr. Bensonhaver was not in good faith in making his judgment. Even Plaintiffs' expert does not question that.

"There is no genuine issue of material fact concerning whether Dr. Bensonhaver was in good faith. A jury could not reasonably conclude that he was not acting in good faith. Since he was in good faith, he is immune from liability even if Plaintiff could prove that the decision to hospitalize him fell below the standard of care. R.C. 5122.34."

Plaintiffs filed a timely notice of appeal. Their sole assignment of error states:

"The trial court erred by granting summary judgment on all claims."

Summary judgment may not be granted unless the entire record demonstrates that there is no genuine issue of material fact and that the moving party is, on that record, entitled to judgment as a matter of law. Civ.R. 56. The burden of showing that no genuine issue of material fact exists is on the moving party. *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 8 O.O.3d 73, 375 N.E.2d 46. All evidence submitted in connection with a motion for summary judgment must be construed most strongly in favor of the party against whom the motion is made. *Morris v. First Natl. Bank & Trust Co.* (1970), 21 Ohio St.2d 25, 50 O.O.2d 47, 254 N.E.2d 683. In reviewing a trial court's grant of summary judgment, an appellate court must view the facts in a light most favorable to the party who opposed the motion. *Osborne v. Lyles* (1992), 63 Ohio St.3d 326, 587 N.E.2d 825.

■ Physicians, including psychiatrists, owe their patients a duty of "good practice." *Berdyck v. Shinde* (1993), 66 Ohio St.3d 573, 613 N.E.2d 1014.

■ "In order to establish medical malpractice, it must be shown by a preponderance of evidence that the injury complained of was caused by the doing of some particular thing or things that a physician or surgeon of ordinary skill, care and diligence would not have done under like or similar conditions or circumstances, or by the failure or omission to do some particular thing or things that such a physician or surgeon would have done under like or similar conditions and circumstances, and that the injury complained of was the direct and proximate result of such doing or failing to do some one or more of such particular things." *Bruni v. Tatsumi* (1976), 46 Ohio St.2d 127, 75 O.O.2d 184, 346 N.E.2d 673, paragraph one of the syllabus.

■ The standard of conduct required to satisfy a physician's duty of good practice is dictated by the custom of the profession. *Littleton v. Good Samaritan*

*Hosp.* (1988), 39 Ohio St.3d 86, 529 N.E.2d 449. Therefore, it is an objective standard.

■ The good faith rule of R.C. 5122.34 creates a subjective standard of conduct which avoids any liability that otherwise results from a defendant's breach of a duty of care arising from an involuntary commitment or a release therefrom. It is a "professional judgment" rule that acknowledges "[t]he inherent difficulty of predicting violent behavior, coupled with the degree of variability exhibited by psychiatrists in clinical practice." Nolan, Ohio Adopts The Professional Judgment Rule (1990), 15 Dayton L.Rev. 319, 332.

■ " ' * * * Factors in reviewing such good faith include the competence and training of the reviewing psychotherapists, whether the relevant documents and evidence were adequately, promptly and independently reviewed, whether the advice or opinion of another therapist was obtained, whether the evaluation was made in light of the proper legal standards for commitment, and whether other evidence of good faith exists.' " *Littleton v. Good Samaritan Hosp., supra,* 39 Ohio St.3d at 96, 529 N.E.2d at 458, quoting *Currie v. United States* (M.D.N.C. 1986), 644 F.Supp. 1074, 1083.

■ The factors identified in *Littleton, supra,* will ordinarily also be relevant to the standard of conduct involved in psychiatric malpractice claims. In that event, the defendant's acts or omissions with respect to them are weighed against the duty of good practice. With regard to the good faith determination that R.C. 5122.34 involves, the defendant's acts or omissions are weighed to determine whether he or she acted on the basis of a judgment, honestly arrived at, that the subject should be committed or released, as the case may be. To rebut that proposition, a plaintiff must prove that no reasonable psychiatrist would have committed or released the plaintiff in the circumstances concerned.

■ Immunity is generally regarded as an affirmative defense. *Spence v. Liberty Twp. Trustees* (1996), 109 Ohio App.3d 357, 672 N.E.2d 213. An affirmative defense operates as a confession and avoidance. Civ.R. 8(C). "It admits for pleading purposes that the plaintiff has a claim (the 'confession') but asserts some legal reason why the plaintiff cannot have recovery on that claim. (the 'avoidance')." 1 Baldwin's Ohio Civil Practice (1988), Section 8–14, at 648. Therefore, the defendants' motion for summary judgment imposed on them the burden to show that there was no genuine issue of material fact concerning the grounds for immunity in R.C. 5122.34. That required a showing by them that Dr. Bensonhaver had acted in good faith when he committed Gerard Loughran. Plaintiffs were then required to offer evidence to contradict that proposition.

The trial court initially found that there was "no evidence that Dr. Bensonhaver was not in good faith in making his judgments" when he ordered Gerard

Loughran's involuntary commitment. Under the rule of *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 662 N.E.2d 264, this finding would require a summary judgment for the defendants if plaintiffs had the burden to prove a lack of good faith or the existence of bad faith to prevail on their claims for relief, and if defendants showed that plaintiffs could not meet that burden. However, plaintiffs had no such burden. Rather, it was the defendants' burden to prove that Dr. Bensonhaver had acted in good faith. If they were able to show that there was no genuine issue of material fact that he did act in good faith, the court was required to grant a summary judgment on their R.C. 5122.34 affirmative defense pursuant to Civ.R. 56, notwithstanding any evidence that the plaintiffs could offer to support their claims for relief.

The trial court granted summary judgment for the defendants on a finding that "[t]here is no genuine issue of material fact concerning whether Dr. Bensonhaver was in good faith" and that the evidence showed that "he was in good faith." The trial court did not recite the evidentiary basis for its conclusion. Presumably, the court relied on evidence before it that Dr. Bensonhaver had information concerning Gerard Loughran's physical and mental condition and consulted with other staff psychiatrists, who concurred with Dr. Bensonhaver's judgment when he signed the commitment order. Even read in a light most favorable to plaintiffs, as Civ.R. 56(C) requires, that evidence demonstrates that Dr. Bensonhaver ordered Gerard Loughran committed on the basis of a judgment honestly arrived at.

Plaintiffs argue that the trial court erred in holding that there is no genuine issue of material fact concerning whether Dr. Bensonhaver acted in good faith. They contend that the issue is preserved by Dr. Steinberg's opinion that the factual findings on which Dr. Bensonhaver relied do not reasonably support any of the three alternative conclusions he arrived at. At most, that evidence demonstrates a failure of good practice. It does not demonstrate that in these circumstances no reasonable psychiatrist would have ordered Gerald Loughran committed. Therefore, defendants are entitled to a summary judgment on all the claims against them pursuant to R.C. 5122.34.

The assignment of error is overruled. The judgment of the trial court will be affirmed.

*Judgment affirmed.*

BROGAN and FAIN, JJ., concur.