OPINION
{¶ 1} Plaintiff-appellant, Sukanya Yayathi, appeals from a judgment of the Franklin County Court of Common Pleas granting summary judgment in favor of defendants-appellees, Jagan Chittiprolu, Murali Chitluri, Sreeramulu Vaka, and Suceela Nalluri (hereinafter collectively referred to as "defendant doctors"). For the following reasons, we affirm that judgment.
 {¶ 2} Appellant and her husband, Swarnapuri, were married in India in 1984, and thereafter, they moved to the United States. Appellant was a licensed physician in India, but she did not obtain a license to practice medicine in the United States. In 1998, appellant and her husband were experiencing marital problems and they began attending marital counseling. Over the years, they sporadically attended such counseling. In 2002, the police were called to their house and charged appellant with domestic violence and assault for pinching and injuring Swarnapuri. Appellant later pleaded guilty to a lesser charge of disorderly conduct.
 {¶ 3} In 2003, Swarnapuri became concerned about what he perceived as his wife's increasing emotional problems and her violent behavior toward him. She frequently pinched and hit him and grabbed him by his ears. Swarnapuri approached one of the defendant doctors, Jagan Chittiprolu, who he knew from their temple, and discussed appellant's behavior with him. Swarnapuri wanted to know what he could do to help his wife. Swarnapuri told Chittiprolu that his wife was violent and hit him, that she had been diagnosed with bipolar disorder, and that he was concerned about a recent deterioration in her behavior. Chittiprolu told Swarnapuri that he thought appellant needed psychiatric care.
 {¶ 4} Shortly thereafter, Chittiprolu held a meeting that included Swarnapuri and the defendant doctors, who are all psychiatrists and who all knew appellant from the Indian community and temple. None of the defendant doctors had ever treated appellant. At that meeting, they discussed appellant's behavior. As a result of their discussions, the defendant doctors completed an "Application for Emergency Admission" to have appellant hospitalized pursuant to R.C. 5122.10. In the application, the defendant doctors asserted that they had reason to believe that appellant was a mentally ill person subject to hospitalization by court order. In addition to the application, the defendant doctors submitted a written statement in which they expressed their concern about appellant's deteriorating behavior. The defendant doctors wrote that appellant exhibited agitation, made threatening phone calls to friends, used foul language, and had been involved in rage attacks against friends. They also expressed concern for Swarnapuri's safety. All four defendant doctors signed this statement.
 {¶ 5} On the evening of September 26, 2003, police officers, relying on the application for emergency admission and the defendant doctors' written statement, entered appellant's home and took her to Netcare, a mental health facility. At Netcare, appellant was seen by Dr. Jay W. Lee, a psychiatrist, who performed an emergency assessment of appellant. Dr. Lee met with appellant and Swarnapuri and also reviewed the defendant doctors' application for emergency admission and written statement. Swarnapuri told Dr. Lee that appellant had exhibited violent behavior and needed hospitalization. Dr. Lee concluded that appellant exhibited symptoms of bipolar, manic type and that she represented a substantial risk of physical harm to herself or others and that she would benefit from treatment for her mental illness. Dr. Lee recommended that appellant be admitted to the Ohio State University Medical Center. On September 27, 2003, appellant was transferred to the Ohio State University Medical Center, where she remained until she was discharged on October 1, 2003. Her discharge summary indicated that she refused medication while in the hospital, but that "there was no further need to hold the patient beyond the duration of emergency certificate."
 {¶ 6} As a result of these events, appellant filed this lawsuit against Netcare and the defendant doctors. Her complaint alleged a variety of claims, including defamation, false imprisonment, intentional and negligent infliction of emotional distress, negligence, and breach of a fiduciary duty. All parties moved for summary judgment. The trial court denied appellant's motion for summary judgment and granted summary judgment in favor of Netcare.[1] Initially, the trial court also granted summary judgment in favor of the defendant doctors only as to appellant's claims for negligence and breach of fiduciary duty. Upon reconsideration, however, the trial court granted summary judgment in favor of the defendant doctors on all of appellant's claims, based on the immunity provided by R.C. 5122.34.
 {¶ 7} Appellant appeals and assigns the following error:
 THE TRIAL COURT ERRED IN DECIDING THAT THE APPELLEES HAD IMMUNITY PURSUANT TO R.C. SECTION 5122.34, AND THEREBY, GRANTING THE APPELLEES' MOTION FOR SUMMARY JUDGMENT.
 {¶ 8} Appellate review of summary judgment motions is de novo.Helton v. Scioto Cty. Bd. of Commrs. (1997), 123 Ohio App.3d 158, 162. "When reviewing a trial court's ruling on summary judgment, the court of appeals conducts an independent review of the record and stands in the shoes of the trial court." Mergenthal v. Star Banc Corp. (1997),122 Ohio App.3d 100, 103. Civ. R. 56(C) provides that summary judgment may be granted when the moving party demonstrates that (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made. State ex rel. Grady v. State Emp.Relations Bd. (1997), 78 Ohio St.3d 181, 183.
 {¶ 9} R.C. Chapter 5122 sets forth specific procedures to be followed when a person is committed to a mental hospital, whether voluntarily or involuntarily. In re T.B., Franklin App. No. 06AP-477, 2006-Ohio-3452, at ¶ 5. In this case, the defendant doctors had appellant hospitalized pursuant to R.C. 5122.10. That statute allows for the emergency hospitalization of an individual, without a hearing, provided that a written statement indicating the reasons for the emergency hospitalization is prepared and given to the hospital. See In reMiller (1992), 63 Ohio St.3d 99, 101-102 (noting that written statement ensures that some minimal level of probable cause exists to show emergency hospitalization is necessary). The written statement may be completed only by certain professionals, including a psychiatrist, a licensed clinical psychologist, and a licensed physician. The statement must indicate the basis for the author's belief that the individual is a mentally ill person subject to hospitalization by court order pursuant to R.C. 5122.01(B) and that the individual represents a substantial risk of physical harm to self or others if allowed to remain at liberty pending examination.
 {¶ 10} R.C. 5122.01(B) defines a mentally ill person subject to hospitalization by court order as a mentally ill person who, because of the person's illness:
 (1) Represents a substantial risk of physical harm to self as manifested by evidence of threats of, or attempts at, suicide or serious self-inflicted bodily harm;
 (2) Represents a substantial risk of physical harm to others as manifested by evidence of recent homicidal or other violent behavior, evidence of recent threats that place another in reasonable fear of violent behavior and serious physical harm, or other evidence of present dangerousness;
 (3) Represents a substantial and immediate risk of serious physical impairment or injury to self as manifested by evidence that the person is unable to provide for and is not providing for the person's basic physical needs because of the person's mental illness and that appropriate provision for those needs cannot be made immediately available in the community; or
 (4) Would benefit from treatment in a hospital for the person's mental illness and is in need of such treatment as manifested by evidence of behavior that creates a grave and imminent risk to substantial rights of others or the person.
 {¶ 11} In the application for emergency admission, the defendant doctors indicated that they had reason to believe that appellant was a mentally ill person subject to hospitalization by court order pursuant to R.C. 5122.01(B)(2) and (4). In their attached written statement, the doctors expressed their concerns about appellant's deteriorating behavior. Specifically, the doctors claimed that appellant exhibited agitation, made threatening phone calls to friends, swore at people, and used foul language. The doctors also wrote that appellant was verbally abusive to her husband and that they were concerned about his safety. The doctors wrote that appellant would benefit from hospitalization and medication. As a result of the application, appellant was hospitalized against her will.
 {¶ 12} In its decision to grant summary judgment in favor of the defendant doctors, the trial court determined that the defendant doctors were entitled to immunity from appellant's claims pursuant to R.C. 5122.34(A). That statute grants immunity to persons acting in good faith, either upon actual knowledge or information thought by them to be reliable, who assist in the hospitalization of a person under R.C. Chapter 5122. The defendant doctors assisted in appellant's hospitalization by submitting the application for emergency admission and the written statement. The relevant question in this appeal concerns whether or not the defendant doctors acted in good faith when they performed these acts.
 {¶ 13} The good faith determination under R.C. 5122.34 involves a weighing of a defendant's acts or omissions to determine whether the defendant acted on the basis of a judgment, honestly arrived at, that the subject should be committed or released. Loughran v. Kettering Mem.Hosp. (1998), 126 Ohio App.3d 468, 474; Griffin v. Twin ValleyPsychiatric Systems, Franklin App. No. 02AP-744. 2003-Ohio-7024, at ¶ 119. Factors to be considered in assessing whether good faith has been exercised include the competence and training of the reviewing psychotherapists, whether the relevant documents and evidence were adequately, promptly and independently reviewed, whether the advice or opinion of another therapist was obtained, whether the evaluation was made in light of the proper legal standards for commitment, and whether other evidence of good faith exists. Littleton v. Good Samaritan Hosp. Health Ctr (1988), 39 Ohio St.3d 86, 96. A defendant producing evidence as to these factors makes a prima facie showing of good faith. In order to rebut that showing, a plaintiff must show that no reasonable psychiatrist would have committed the patient under the circumstances.Loughran; Griffin.
 {¶ 14} Each of the defendant doctors submitted largely identical affidavits in support of their motions for summary judgment and reconsideration. Each affidavit states that, based on the doctor's education, training, experience, observation of and interaction with appellant and her husband, and statements made by appellant and her husband, the doctor formed a good faith belief that appellant suffered from a mental illness. Each doctor stated that they believed appellant was verbally abusive and violent to Swarnapuri and that she hit and pinched him and caused him injury. Each of the doctors stated that they believed Swarnapuri's statements that appellant was violent, that he was fearful of her, and that he wanted her to get some help. Each of the doctors reiterated their belief that appellant was a mentally ill person subject to hospitalization by court order pursuant to R.C. 5122.01(B)(2) and (4).
 {¶ 15} The defendant doctors' affidavits present sufficient facts, under the Loughran factors, to make a prima facie showing that they acted in good faith. Each of the doctors is licensed to practice medicine in Ohio since at least 2000 and is engaged in the clinical practice of psychiatry. Each of the doctors knew appellant and Swarnapuri since at least 1997. They each concluded that appellant was suffering mental illness based on their own education, experience, and observations of appellant. Swarnapuri thought his wife needed mental help and was concerned about his wife's deteriorating behavior. He expressed these concerns to the defendant doctors and told them about appellant's violent behavior toward him and her bipolar diagnosis. All four of the defendant doctors concurred with each other's opinion. Their evaluation was made under the proper legal standards set forth in R.C. 5122.01(B) and 5122.10. Additionally, it appears as though Swarnapuri came to the defendant doctors seeking help for his wife and it was only then that the defendant doctors decided that emergency commitment would be required. They did not initiate the procedure themselves. Finally, Dr. Lee from Netcare concurred with the defendant doctors' conclusion that emergency admission was appropriate under these circumstances.
 {¶ 16} Appellant attempts to rebut the prima facie showing of good faith, and to show that a genuine issue of material fact exists regarding the defendant doctors' good faith, by arguing that their actions were taken in retaliation for a phone message she left for Dr. Chittiprolu's wife on September 23, 2003, two days before she was involuntarily committed. Appellant contends that Dr. Chittiprolu, who was upset about the message, was the driving force behind the defendant doctors' decision to have her hospitalized, and if his good faith is questioned, then the good faith of all the defendant doctors must be questioned. Appellant also points to the fact that on September 29, 2003, while appellant was hospitalized, Dr. Chittiprolu filed a criminal complaint against appellant, requesting a restraining order to protect his family from appellant.
 {¶ 17} We fail to see how an allegedly objectionable phone message for Dr. Chittiprolu's wife creates a genuine issue of material fact with respect to whether Drs. Chitluri, Vaka, or Nalluri acted in good faith. Appellant presented no evidence that these doctors acted with an improper, retaliatory motive because of the phone message left by appellant for Dr. Chittiprolu's wife. Appellant presented no evidence that a reasonable psychiatrist would not have committed her under these circumstances. Therefore, appellant failed to rebut the prima facie showing that these doctors acted in good faith.
 {¶ 18} Nor do we find that appellant presented sufficient evidence to raise a genuine issue of material fact regarding whether Dr. Chittiprolu acted in good faith. Although appellant's phone message for Dr. Chittiprolu's wife may have affected Dr. Chittiprolu, appellant's theory that her message caused Dr. Chittiprolu to retaliate against her is mere speculation. Appellant presented no other evidence to support her contention that Dr. Chittiprolu acted in a retalitory manner. It is undisputed that Swarnapuri approached Dr. Chittiprolu seeking help for his wife. Dr. Chittiprolu then consulted with three other doctors before participating in appellant's forced hospitalization. Dr. Chittiprolu's affidavit reflects that he based his actions on his education, knowledge, observations of and interactions with appellant and her husband. Again, appellant presented no evidence that a reasonable psychiatrist would not have committed her under these circumstances. Nor can Dr. Chittiprolu's filing of a criminal complaint against appellant raise a genuine issue of material fact regarding Dr. Chittiprolu's good faith in having her committed because he filed the complaint after she was already hospitalized. Given these undisputed facts, we conclude that appellant failed to rebut the prima facie showing of Dr. Chittiprolu's good faith.
 {¶ 19} The defendant doctors' affidavits made a prima facie showing of their good faith, and appellant did not present sufficient evidence to rebut that showing or to create a genuine issue of material fact. The trial court properly found that no genuine issues of material fact existed regarding the defendant doctors' good faith in acting to have appellant hospitalized under R.C. 5122.10. Accordingly, the defendant doctors are entitled to immunity from appellant's claims provided by R.C. 5122.34. Appellant's lone assignment of error is overruled and the judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
 FRENCH and TRAVIS, JJ., concur.
[1] Appellant has not appealed that portion of the trial court's decision.