OPINION *Page 2 
{¶ 1} Plaintiffs-Appellants appeal the September 16, 2006, decisions of the Tuscarawas County Court of Common Pleas, granting Appellees' motions for summary judgment.
 STATEMENT OF THE FACTS AND CASE {¶ 2} Plaintiff's decedent, Tristan Johnson, had a long history of psychiatric illnesses and illicit drug use prior to his death by suicide on August 27, 2003, at the age of 21. (F. Johnson Depo. at 17; Request for Admission, #1 and #2, attached to Motion for Summary Judgment of Defendant Cornerstone).
 {¶ 3} From an early age, Tristan began receiving treatment for his mental illness and substance abuse, including both outpatient and inpatient treatment, and was being medicated with anti-psychotic and anti-depressant medications. (F. Johnson Depo. at 23-25). Decedent also was known to have a history of non-compliance with taking his prescribed medications and failing to follow prescribed courses of therapy and counseling. (F. Johnson Depo. at 48-49, 52-53; Request for Admission, #3).
 {¶ 4} In July, 2002, after he made a suicide attempt by hanging, Tristan came under the care of Appellee, Suresh A. Patel, M.D., a psychiatrist with and Medical Director of Cornerstone Support Services, Inc., who provided him with medication management and supportive care at intervals up to August 22, 2003. (F. Johnson Depo. at 67, 70; Dr. S. Patel Depo. at 22).
 {¶ 5} During that same time period, Defendant, Cornerstone Support Services, Inc. provided case management services and counseling services to Tristan. (Dr. S. *Page 3 
Patel Depo. at 23, 41, 53, 102, 103). (Cornerstone was previously dismissed as a Defendant in this case and is not a party to this appeal).
 {¶ 6} On two separate occasions in August, 2003, Tristan was taken to the Emergency Room at Union Hospital for drug overdoses. (Request for Admission, #8).
 {¶ 7} After his second overdose on August 21, 2003, Tristan was admitted to Mercy Medical Center on an emergency involuntary basis pursuant to R.C. § 5122.05 and § 5122.07. (Plaintiffs' Brief in Opposition to Defendant Mercy Medical Center's Motion for Summary Judgment, Ex. A, Mercy Medical Center Chart, p. 83).
 {¶ 8} At the time of decedent's involuntary commitment to Mercy Medical Center on August 22, 2003, Appellee, Dr. Suresh Patel, was leaving for a pre-planned vacation with his family (Dr. S. Patel Depo. at 62-63) and his long-time partner of 20 years, Appellee, Kanubhai Patel, M.D., became Tristan's attending physician during his hospitalization at Mercy Medical Center. (Dr. S. Patel Depo. at 64).
 {¶ 9} Three days later, on August 25, 2003, Tristan executed a form changing his status from an involuntary admission to a voluntary admission. (Id. at p. 81). During his admission to Mercy Medical Center, Tristan was provided care and treatment by the Mercy Medical Center nursing and therapy staff and by Kanubhai Patel, M.D.
 {¶ 10} On August 27, 2003, Tristan Johnson was discharged. Tristan's mother, Plaintiff-Appellant Ruth Ann Johnson, picked up her son when he was discharged from the hospital. (R. Johnson Depo. at 39).
 {¶ 11} Mrs. Johnson left Tristan alone at the family home for approximately 20-25 minutes while she went out to pick up a pizza and medications for Tristan. (F. *Page 4 
Johnson Depo. at 116). When she returned, Mrs. Johnson discovered that Tristan had committed suicide by hanging. (R. Johnson Depo. at 48-49).
 {¶ 12} On January 24, 2005, Plaintiffs Francis F. Johnson, his wife, Ruth Johnson, and their son, Nathan filed this medical malpractice lawsuit against multiple Defendants including Appellees, Kanubhai C. Patel, M.D., Suresh A. Patel, M.D., Behavioral Psychiatric Consultants, Inc. (hereinafter collectively referred to as "Drs. Patel") and Mercy Medical Center. The Complaint averred that Behavioral Consultants, its two psychiatrists, and employees of Mercy all "failed to exercise the ordinary degree of care, skill and diligence in their diagnosis, care, and treatment of Plaintiff's decedent" and that Tristan Johnson died as a result of the "negligence and/or failure to exercise professional judgment" of all Appellees.(Complaint, ¶¶ 3, 10, 11).
 {¶ 13} On February 22, 2005, Drs. Patel filed their Answer denying any and all allegations of negligence, as well as allegations of wanton, willful and reckless conduct. On or about May 25, 2006, Mercy filed a Motion for Summary Judgment and Memorandum in Support. Mercy sought summary judgment in its favor on the following grounds: (1) that Appellants could not establish a prima facie case of negligence against Mercy; (2) that Mercy was immune from liability pursuant to two separate sections of the Ohio Revised Code; (3) that Tristan Johnson's suicide was an intervening act and the sole proximate cause of his death; and (4) that Ohio law does not recognize a claim, asserted by Appellants, for the loss of consortium of an adult child.
 {¶ 14} On or about July 5, 2006, Drs. Patel filed a Motion for Summary Judgment and Memorandum in Support pursuant to Ohio Civil Rule 56. Drs. Patel sought *Page 5 
summary judgment in their favor on the following grounds: (1) that Plaintiffs could not establish a prima facie case of medical malpractice; (2) that decedent's suicide was an independent, intervening act breaking the chain of causation between alleged negligence by Drs. Patel and decedent's suicide; and, (3) that Drs. Patel are immune from liability as provided by R.C. § 5122.34 and § 2305.51. (Drs. Patel sought to have the loss of consortium claims of decedent's parents dismissed as a matter of law. Although Appellants argued their loss of consortium claims at the trial court level/ they did not assign as error the lower court's holding in favor of Drs. Patel on this issue and, therefore, have waived any argument related thereto).
 {¶ 15} On September 5, 2006, the trial court entertained the arguments of all parties relative to the propriety of awarding, summary judgment.
 {¶ 16} On September 16, 2006, the trial court entered two separate judgment entries, one granting summary judgment in favor of Mercy Medical Center and the other awarding summary judgment to the Doctors Patel and their practice group.
 {¶ 17} It is from that Judgment that this appeal is taken. Appellants assign the following errors for review:
 ASSIGNMENTS OF ERROR {¶ 18} "I. THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT IN FAVOR OF THE APPELLEES AS GENUINE ISSUES OF MATERIAL FACT EXIST AS TO WHETHER APPELLANT MADE A PRIMA FACIE CASE OF NEGLIGENCE AGAINST THE APPELLEES. *Page 6 
 {¶ 19} "II. THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT IN FAVOR OF THE APPELLEES AS GENUINE ISSUES OF MATERIAL FACT EXIST AS TO WHETHER TRISTAN JOHNSON'S SUICIDE WAS FORESEEABLE.
 {¶ 20} "III. THE TRIAL COURT ERRED AS A MATTER OF LAW IN GRANTING SUMMARY JUDGMENT IN FAVOR OF THE APPELLEES BY DETERMINING THAT THE APPELLEES WERE IMMUNE FROM LIABILITY PURSUANT TO O.R.C. § 5122.34 AND § 2305.51."
 "Summary Judgment Standard" {¶ 21} Summary judgment proceedings present the appellate court with the unique opportunity of reviewing the evidence in the same manner as the trial court. Smiddy v. The Wedding Party, Inc. (1987),30 Ohio St.3d 35, 36. Civ.R. 56(C) provides, in pertinent part:
 {¶ 22} "Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. * * * A summary judgment shall not be rendered unless it appears from such evidence or stipulation and only therefrom, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in his favor."
 {¶ 23} Pursuant to the above rule, a trial court may not enter a summary judgment if it appears a material fact is genuinely disputed. The party moving for *Page 7 
summary judgment bears the initial burden of informing the trial court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. The moving party may not make a conclusory assertion that the non-moving party has no evidence to prove its case. The moving party must specifically point to some evidence which demonstrates the non-moving party cannot support its claim. If the moving party satisfies this requirement, the burden shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. Vahila v. Hall, 77 Ohio St.3d 421, 429, 1997-Ohio-259, citingDresher v. Burt, 75 Ohio St.3d 280, 1996-Ohio-107.
 {¶ 24} It is based upon this standard that we review appellant's assignments of error.
 III. {¶ 25} For purposes of judicial economy the Court will first address appellants' third assignment of error.
 {¶ 26} In their third assignment of error, Appellants argue that the trial court erred in granting summary judgment in favor of the Appellees by determining that the Appellees were immune from liability pursuant to R.C. § 5122.34 and § 2305.51. We disagree.
 {¶ 27} In its Entries granting Appellees' motions for summary judgment, the trial court found, inter alia:
 {¶ 28} ". . . the Plaintiffs have failed to produce a sufficient quantum of evidence on the issues postured for Summary Judgment for which the Plaintiffs bear the burden of production at Trial. *Page 8 
 {¶ 29} "* * *
 {¶ 30} "This Defendant is immune from liability for its alleged negligence as provided by R.C. 2305.51 and R.C. 5122.34."
 {¶ 31} Revised Code § 5122.34, provides in relevant part:
 {¶ 32} CHAPTER 5122. HOSPITALIZATION OF MENTALLY ILL
 {¶ 33} R.C. § 5122.34 LIABILITY
 {¶ 34} "(A) Persons, including, but not limited to, boards of alcohol, drug addiction, and mental health services and community mental health agencies, acting in good faith, either upon actual knowledge or information thought by them to be reliable, who procedurally or physically assist in the hospitalization or discharge, determination of appropriate placement, or in judicial proceedings of a person under this chapter, do not come within any criminal provisions, and are free from any liability to the person hospitalized or to any other person.
 {¶ 35} "(B) Regardless of whether any affirmative action has been taken under this chapter with respect to a mental health client or patient and except as otherwise provided in section 2305.51 of the Revised Code, no person shall be liable for any harm that results to any other person as a result of failing to disclose any confidential information about the mental health client or patient, or failing to otherwise attempt to protect such other person from harm by such client or patient.
 {¶ 36} "(C) This section applies to expert witnesses who testify at hearings under this chapter. *Page 9 
 {¶ 37} "(D) The immunity from liability conferred by this section is in addition to and not in limitation of any immunity conferred by any other section of the Revised Code or by judicial precedent."
 {¶ 38} Immunity is generally regarded as an affirmative defense.Spence v. Liberty Twp. Trustees (1996), 109 Ohio App.3d 357,672 N.E.2d 213. An affirmative defense operates as a confession and avoidance. Civ.R. 8(C). "It admits for pleading purposes that the plaintiff has a claim (the `confession') but asserts some legal reason why the plaintiff cannot have recovery on that claim. (the `avoidance')." 1 Baldwin's Ohio Civil Practice (1988), Section 8-14, at 648. Therefore, the Appellees' motions for summary judgment imposed on them the burden to show that there was no genuine issue of material fact concerning the grounds for immunity in R.C. 5122.34. That required a showing by them that Drs. Patel had acted in good faith with regard to the commitment and release of Tristan Johnson. Appellants were then required to offer evidence to contradict that proposition.
 {¶ 39} Under the rule of Dresher v. Burt (1996), 75 Ohio St.3d 280,662 N.E.2d 264, it is the Appellees' burden to prove that Drs. Patel had acted in good faith. If they were able to show that there was no genuine issue of material fact that they did act in good faith, the trial court was required to grant a summary judgment on their R.C. 5122.34
affirmative defense pursuant to Civ.R. 56, notwithstanding any evidence that the plaintiffs could offer to support their claims for relief.
 {¶ 40} The relevant question in this appeal concerns whether or not the defendant doctors acted in good faith when they released the Appellants' decedent from the hospital. *Page 10 
 {¶ 41} The good faith rule of R.C. § 5122.34 creates a subjective standard of conduct which avoids any liability that otherwise results from a defendant's breach of a duty of care arising from an involuntary commitment or a release therefrom. It is a "professional judgment" rule that acknowledges "[t]he inherent difficulty of predicting violent behavior, coupled with the degree of variability exhibited by psychiatrists in clinical practice." Nolan, Ohio Adopts The Professional Judgment Rule (1990), 15 Dayton L.Rev. 319, 332. Loughran v. KetteringMem. Hosp. (1998), 126 Ohio App.3d 468, 474, 710 N.E.2d 773
 {¶ 42} The good faith determination under R.C. § 5122.34 involves a weighing of a defendant's acts or omissions to determine whether the defendant acted on the basis of a judgment, honestly arrived at, that the subject should be committed or released. Loughran; Griffin v. TwinValley Psychiatric Systems, Franklin App. No. 02AP-744. 2003-Ohio-7024, at ¶ 119. Factors to be considered in assessing whether good faith has been exercised include the competence and training of the reviewing psychotherapists, whether the relevant documents and evidence were adequately, promptly and independently reviewed, whether the advice or opinion of another therapist was obtained, whether the evaluation was made in light of the proper legal standards for commitment, and whether other evidence of good faith exists. Littleton v. Good Samaritan Hosp. Health Ctr. (1988), 39 Ohio St.3d 86, 96, 529 N.E.2d 449. A defendant producing evidence as to these factors makes a prima facie showing of good faith. In order to rebut that showing, a plaintiff must show that no reasonable psychiatrist would have committed the patient under the circumstances. Loughran v. Kettering Memorial Hospital (1998),126 Ohio App.3d 468; Griffin. *Page 11 
 {¶ 43} Both Dr. Suresh Patel and Dr. Kanubhai Patel each submitted affidavits in support of their motions for summary judgment. Each affidavit stated that, based on the doctor's education, training, experience, observation of and interaction with the decedent, the doctor made good faith judgments in assisting with the hospitalization and discharge of Tristan Johnson.
 {¶ 44} The Appellee doctors' affidavits presented sufficient facts, under the Loughran factors, to make a prima facie showing that they acted in good faith in releasing the decedent. Said affidavits also stated that each of the doctors is licensed to practice medicine in Ohio and is actively engaged in the clinical practice of psychiatry.
 {¶ 45} Additionally, Appellees Patel filed the deposition of their expert, Phillip Resnick, M.D., stating that is was his opinion that Drs. Patel met the accepted standards of care and that the decision to allow Tristan Johnson to be discharged was reasonable.
 {¶ 46} The trial court granted summary judgment for the Appellees on a finding that "[t]hese Defendants are immune from liability for their alleged negligence as provided by R.C. 2305.51 and R.C. 5122.34." While, the trial court did not recite the evidentiary basis for its conclusion it can be presumed that the trial court relied on the affidavits of Drs. Patel and their expert, Dr. Resnick.
 {¶ 47} Even read in a light most favorable to Appellants, as Civ.R. 56(C) requires, that evidence demonstrates that Drs. Patel ordered Tristan Johnson released on the basis of a judgment honestly arrived at in good faith.
 {¶ 48} Appellants argue that the trial court erred in holding that there is no genuine issue of material fact concerning whether Drs. Patel acted in good faith. They *Page 12 
contend that the issue is preserved by Dr. Maltsberger's opinion that the factual findings on which Drs. Patel relied do not reasonably support the decision to release Tristan Johnson. At most, that evidence demonstrates a failure of good practice. It does not demonstrate that in these circumstances no reasonable psychiatrist would have ordered Tristan Johnson committed. No evidence was submitted to support any contention to Appellee's expert, Dr. Resnick, was not "reasonable".
 {¶ 49} Based on the foregoing, we find that the trial court did not err in finding that Appellees were immune from liability under R.C. § 5122.34.
 {¶ 50} For the above same reasons, we find that the trial court did not err in finding that Mercy Medical Center was immune under R.C. § 5122.34.
 {¶ 51} Appellants' third assignment of error is overruled.
 I., II. {¶ 52} Given our decision on appellants' third assignment of error, appellants remaining assignments of error are moot and we decline to address them. See App.R.12(A)(1)(c).
 {¶ 53} For the foregoing reasons, the judgment of the Court of Common Pleas, Tuscarawas County, Ohio, is affirmed.
By: Wise, J.
Farmer, P. J., concurs.
 Delaney, J., dissents. *Page 13